Toomey, J.
The plaintiffs, Michelle Guevin (“Guevin”) and her minor children Thomas Paul Lafrennie (“Thomas Paul”), Claudette Lafrennie (“Claudette”), and William G. Lafrennie (“William”) (or, collectively, “plaintiffs”), brought this suit against the Southern Worcester County Rehabilitation Center, Inc. (SWCRC) and its executive director Thomas Amick (“Amick") (or, collectively, “defendants”), claiming retaliatory discharge in violation of G.L.c. 149, §185 (Count I), wrongful discharge in violation of public policy (Count II), intentional infliction of emotional distress (Count III), interference with civil rights in violation of G.L.c. 12, §111, the Massachusetts Civil Rights Act (“MCRA”) (Count IV), and loss of parental consortium (Counts V-VII). The case is now before the court on defendants’ motion to dismiss the plaintiffs’ complaint.[4] For the following reasons, the defendants’ motion to dismiss is ALLOWED in part, and DENIED in part.
BACKGROUND
In February 1996, Guevin was employed by SWCRC as an at-will employee to work at its Gardner location, a facility housing residents with mental and physical disabilities. On or about July 1996, Guevin became SWCRC’s Human Rights Officer. Guevin’s supervisor, Valerie Wauhkonen (“Program Manager”), was responsible for staffing the facility, maintaining patient money and food stamp accounts, allocating funds for the purchase of food, and overseeing client medication and medication incident reports.
On a number of occasions during her employment, Guevin filed oral and written complaints with the Program Manager regarding what she believed to be violations of the Department of Mental Retardation’s regulations and criminal law. The complaints involved medication errors not properly identified or addressed, human rights violations, financial misconduct with respect to patient funds, and inappropriate staffing levels. Guevin asserts that no action was taken in response to her written and oral complaints. She also alleges that on several occasions, the Program Manager falsely entered names upon adverse medication incident reports. More specifically, Guevin avers that, on May 20, 1996, the Program Manager signed Guevin’s name to a medication incident report in order to cover for another employee.[5]
In September 1996, Guevin resigned as the Human Rights Officer due to the Program Manager’s inaction regarding her complaints. She otherwise continued her employment with SWCRC. On or about October 22, 1996, Guevin contacted the Department of Mental Retardation to report the violations contained in Guevin’s previous internal complaints.[6] On October 23, 1996, the Program Manager was informed by a co-worker that Guevin intended to contact a regulatory agency to seek redress for SWCRC’s clients due to the agency’s failure to take corrective action on the numerous complaints she, as Human Rights Officer, had submitted.
On October 25, 1996, the Program Manager informed Guevin, by telephone, that she was fired for not calling in on the two previous days. That afternoon, Guevin, accompanied by her attorneys, returned to the Gardner facility. The Program Manager informed the group that Guevin had quit, but Guevin’s counsel countered that the plaintiff had not quit and was ready to work. The Program Manager then informed the parties that company policy forbade the plaintiff from coming on the premises and that, if she did enter, she would be arrested.
Guevin’s Complaint asserts that the Program Manager’s action constituted her discharge. Guevin also alleges that Amick knew of the retaliatory character of the firing and the false nature of its underpin *600 nings, but took no action to remedy the wrong done to Guevin.
DISCUSSION
Pursuant to Mass.R.Civ.P. 12(b)(6), a court will dismiss a complaint for failure to state a claim where “it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nadar v. Citron, 372 Mass. 96, 98 (1977). The court must accept as true the well-pleaded factual allegations of the complaint and any inferences in the plaintiffs favor that can be drawn therefrom. Eyal v. The Helen Broadcasting Co., 411 Mass. 426, 429 (1991). See also Brum v. Town of Dartmouth, 44 Mass.App.Ct. 318, 321, affd. on other grounds, 428 Mass. 684 (1999). Thus, a plaintiff will prevail over a motion to dismiss “unless it appears with certainty that he is entitled to no relief under any combination of facts that could be proved in support of his claim.” Brum, 44 Mass.App.Ct. at 322. Of the Counts that remain in the suit at bar (see fn 4, supra), only Count IV will succumb to the defendants’ Motion to Dismiss.
Count II: Wrongful Discharge in Violation of Public Policy
Guevin claims that she was discharged in violation of the public policy evidenced by G.L.c. 19B, establishing the Department of Mental Retardation, and G.L.c. 19C, creating the Disabled Persons Protection Commission and setting forth a framework for reporting incidents of abuse against disabled persons. The defendants contend that the plaintiffs claim for wrongful discharge in violation of public policy cannot survive because there is a well-defined statute providing similar rights. That is, the defendants maintain that another statute occupies the field and precludes the plaintiff from laying their suit under the “wrongful discharge . . . public policy” theory.
The defendants rely upon G.L.c. Ill, §72G and argue that the plaintiffs cannot assert the public policy cause of action because that statute provides the exclusive civil remedy available to the plaintiffs.[7] The defendants’ contention is, however, overbroad. It is true that, when an employee has a cause of action under the workers’ compensation statutes or employment discrimination laws, that employee is precluded from asserting a public policy cause of action. See generally, Doe v. Purity Supreme, Inc., 422 Mass. 563, 565-67 (1994) (court refused to fashion a common law remedy in matters involving workers’ compensation issues where the Legislature had already created a statutory remedy); Melley v. Gillette, 19 Mass.App.Ct. 511, 514 (1985) (court declined to recognize a common law right based on public policy where Legislature had created a detailed administrative solution and provided specific remedies for violations of discrimina-tions laws). Those statutory provisions, however, each contain specific exclusivity provisions, generally present detailed administrative schemes, and outline specific remedies available to an aggrieved person. See generally, G.L.c. 152, §24; G.L.c. 15 IB, §9. Unlike those detailed statutes, there is nothing in the language of G.L.c. Ill, §72G, establishing it as the exclusive remedy available to those against whom retaliation has ensued for their making a report of abuse to an outside commission.[8] Accordingly, the defendants’ assertion of exclusivity of remedy must fail and their motion to dismiss Count II will be denied.
Count IV: Massachusetts Civil Rights Act
Guevin alleges that, at the time of her termination, the Program Manager forbade her from entering the grounds of the facility and threatened her with arrest. Guevin claims that the threat of arrest interfered with her rights to associate with her friends at the facility, a right secured by the First Amendment to the Constitution and by Article XIX of the Massachusetts Declaration of Rights.
To offer an actionable claim in Count IV, to wit, a violation of the MCRA, Guevin must allege that (1) her exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and that (3) the interference or attempted interference was by threats, intimidation, or coercion. Reproductive Rights Network v. President of University of Massachusetts, 45 Mass.App.Ct. 495, 505 (1998). Her complaint is inadequate so to allege.[9]
Guevin has not sufficiently alleged a violation of her right to free association. Because the SWCRC is a private entity, its preclusion of Guevin from entering its private property, in the circumstances alleged in the complaint, does not constitute a violation of the MCRA. The Supreme Judicial Court has recognized that “constitutionally protected freedom of association maybe understood in two distinct senses; the right ‘to enter into and maintain certain intimate human relationships,’ and a right ‘to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion.’ ” Concord Rod & Gun Club v. Mass. Comm. Against Discrm., 402 Mass. 716, 721 (1988), citing Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984). Personal affiliations that may be constitutionally protected are relationships involving family, marriage, raising and educating children, cohabitation with one’s relatives etc. See Roberts, 468 U.S. at 620-21 (citations omitted). Visiting with a friend on private property, as plaintiff at bar sought to do, is not the sort of “association” protected by the Constitution or laws of the Commonwealth. Contrast Reproductive Rights Network, 45 Mass.App.Ct. at 505-09 (University violated political organization’s freedom of association and speech, and consequently the MCRA, by blocking the organization’s access to a public facility); Batchelder v. Allied Stores Corp., 393 Mass. 819, 823 (1985) (MCRA violated when security guard at shop *601 ping center prevented political candidate from soliciting nominating signatures, a right secured under Massachusetts constitutional articles relating to freedom and equality of elections). Accordingly, Guevin has not stated a claim in Count IV for which relief may be afforded and Guevin’s MCRA claim must be dismissed. Mass.R.Civ.P. 12(b)(6).
Counts V-VII: Loss of Parental Consortium
Because Count II survives, the plaintiffs’ loss of consortium claims remain viable and the motion to dismiss Count V, VI, and VII will not prevail.
ORDER
For the foregoing reasons, it is hereby ORDERED, that the Defendants’ Motion to Dismiss is ALLOWED as to Count IV, and DENIED as to Counts n, V, VI, and VII. Counts I and III are hereby DISMISSED by agreement of the parties.

 Counts I and III have already been dismissed by agreement of the plaintiffs. The plaintiffs also agree that Counts V-VH, the loss of parental consortium claims, must also be dismissed if the remaining Counts II and IV are dismissed by this court.

 Although the Complaint alleges that false signing occurred on May 20, 1997, the year cited is likely a typographic error as the plaintiffs employment with the defendant terminated in October 1996.

 The instant Complaint also alleges that on or about October 23, 1996, the plaintiff attempted to contact the Assistant District Attorney regarding forged records. The plaintiff did call and report violations to the Attorney General’s Office on or about October 29, 1996.

 G.L.c. Ill, §72G provides: “No facility . . . shall discharge, or in any way discriminate or retaliate against any person who, in good faith, makes ... [a report of abuse], or testifies or is about to testify in any proceeding about the abuse, mistreatment or neglect of a patient or resident... A facility . . . which discharges, discriminates or retaliates against such a person shall be liable to the person so discharged, discriminated or retaliated against, for treble damages, costs and attorneys fees.”

 The Supreme Judicial Court has declined to consider whether a claim for discharge in violation of public policy is preempted by G.L.C. 111, §72G. See Hobson v. McLean Hosp. Corp., 402 Mass. 413, 416-17 n. 4 (1988).

 The defendants also contend that they cannot be held accountable for violations of the MCRA, under the theory of respondeat superior, by the Program Manager. Until recently, federal courts interpreting the MCRA have held that employers cannot be liable under the theory of respondeat superior. See Lyons v. National Car Rental Systems, 30 F.3d 240, 245-47 (1st Cir. 1994). However, a Massachusetts appellate court has held that a corporation can be held vicariously liable under state civil rights laws for civil rights violations committed by their agents acting in the scope of their employment. See Sarvis v. Boston Safe Deposit and Trust Co., 47 Mass.App.Ct. 86, 97, review denied, 430 Mass. 1106 (1999). This court need not address that issue as the plaintiff has not sufficiently alleged a cause of action under the statute. See infra.